May 23, 2023

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>NEERAJ BHATT,<br><br>Defendant. | No. 3:23-mj-00328-KFR |

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND APPLICATION FOR ARREST WARRANT**

I, Katie Yarborough, having been first duly sworn, do hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI). I have been a SA with the FBI for approximately four years. I am currently assigned to the Violent Crime squad in the FBI Anchorage Field Office. During my time with the FBI, I have led and participated in investigations involving violent crimes, threats, robbery, fraud, and drugs. I also investigate violations of federal law occurring in the special aircraft, maritime, and territorial jurisdiction of the United States.

2. I make this affidavit in support of an application for a criminal complaint and arrest warrant pursuant to Federal Rules of Criminal Procedure 3 and 4. As explained more fully below, I have probable cause to believe that NEERAJ BHATT has committed the following federal criminal offense:

> **Count 1**: That on or about May 22, 2023, within the District of Alaska, at or near Seward and Anchorage, the defendant, NEERAJ BHATT, did willfully

make a materially false statement in a matter within the jurisdiction of the FBI and the U.S. Coast Guard Investigative Service (CGIS), in violation of 18 U.S.C. § 1001.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. Because the affidavit is intended to establish probable cause to support a complaint and secure an arrest warrant, I have not included each and every fact known to me concerning this investigation.

## FACTS ESTABLISHING PROBABLE CAUSE

4. To summarize: I submit that this affidavit establishes probable cause to believe that the Defendant, NEERAJ BHATT (BHATT), made oral statements to FBI and CGIS, knowing that they were false, and knowing that doing so was unlawful, and, further, he intended to deceive law enforcement regarding his actions because he knew that federal law enforcement was investigating his actions that could constitute crimes.

5. FBI and CGIS have jurisdiction to investigate matters within in the special maritime and territorial jurisdiction of the United States, defined at 18 U.S.C. § 7, including, without limitation: (1) the high seas; and (8) to the extent permitted by international law, any foreign vessel during a voyage having a scheduled departure from or arrival in the United States with respect to an offense committed by or against a national of the United States.

    a. <u>Matters under investigation</u>: As described further, below, in this matter, FBI and CGIS investigated BHATT's conduct regarding Victim-1 to determine whether BHATT committed any offense. In particular, as of the time FBI and CGIS boarded the cruise ship on May 22, 2023, those agencies were investigating whether BHATT's conduct violated 18 U.S.C. § 2241(a): Aggravated Sexual Abuse, or 18

United States v. NEERAJ BHATT
Affidavit in Support of Criminal Complaint
Page 2 of 7
Case 3:23-mj-00328-KFR     Document 1-1     Filed 05/24/23     Page 2 of 7

May 23, 2023

U.S.C. § 2241(a)(1): Abusive Sexual Contact.

b. <u>Jurisdiction based on high seas</u>. CGIS produced the following chart showing the approximate location of the cruise ship at the time of the incident, described below, in which BHATT entered Victim-1's cabin three times:



According to CGIS the, the red "x" is located approximately 50 nautical miles from any land mass.

Per 33 C.F.R. § 2.32, "[f]or purposes of special maritime and territorial jurisdiction of the United States as defined in 18 U.S.C. 7, high seas means all waters seaward of the territorial sea baseline." Per 33 C.F.R. § 2.20, "[t]erritorial sea baseline means the line defining the shoreward extent of the territorial sea of the United States drawn according to the principles, as recognized by the United States, of the Convention on the Territorial Sea and the Contiguous Zone, 15 U.S.T. 1606,

United States v. NEERAJ BHATT
Affidavit in Support of Criminal Complaint
Page 3 of 7
Case 3:23-mj-00328-KFR   Document 1-1   Filed 05/24/23   Page 3 of 7

and the 1982 United Nations Convention on the Law of the Sea (UNCLOS), 21 I.L.M. 1261. Normally, the territorial sea baseline is the mean low water line along the coast of the United States." Further, per the Convention on the Territorial Sea and the Contiguous Zone, 15 U.S.T. § 1606, Article 3, "[e]xcept where otherwise provided in these articles, the normal baseline for measuring the breadth of the territorial sea is the low-water line along the coast as marked on large-scale charts officially recognized by the coastal State."

Therefore, I submit that, at the time of the events under investigation by FBI and CGIS, the cruise ship was on the high seas.

c. <u>Jurisdiction based on American victim on foreign vessel</u>. According to CGIS, the cruise ship upon which the events described herein is a "foreign vessel" because it is registered as being flagged in The Commonwealth of the Bahamas, which is a foreign State. Therefore, I submit that the cruise ship described herein is a "foreign vessel." Further, Victim-1 is a national of the United States because, per 8 U.S.C. § 1401(a), she was born in the United States and is subject to the jurisdiction thereof.

6. On or about May 22, 2023, FBI and CGIS responded to a report of an incident that recently occurred on a cruise ship en route to Seward, Alaska. FBI and CGIS agents boarded the ship in Seward and interviewed multiple people, including an adult female passenger ("Victim-1") and BHATT. BHATT was, at the time, a crew member with the position of stateroom attendant. According to the cruise line, the ship departed Vancouver, Canada, on May 15, 2023, and arrived in Seward, Alaska, on May 22, 2023. According

United States v. NEERAJ BHATT
Affidavit in Support of Criminal Complaint
Page 4 of 7
Case 3:23-mj-00328-KFR  Document 1-1  Filed 05/24/23  Page 4 of 7

7. According to Victim-1[1], earlier in the voyage, BHATT caused her to feel uncomfortable when he insisted on unpacking her clothing despite her telling him that she could do it later, by knocking on her door when it was locked, and repeatedly calling her cabin. Victim-1 tried to avoid BHATT. On or about May 16, 2023, BHATT followed Victim-1 to her cabin and opened the door. BHATT entered the cabin with Victim-1 and allowed the door to close behind them. According to the cruise line, BHATT violated company policy by remaining in a closed cabin with Victim-1. Victim-1 said that BHATT commented regarding Victim-1's thigh(s) or leg(s) and offered to massage her and apply lotion to her skin. Before Victim-1 could answer, BHATT left her cabin and returned shortly, entering a second time, now carrying two bottles of lotion. Victim-1 indicated that she "did not know how to say no" and, therefore, allowed BHATT to begin massaging her, hoping that he would "get it over with & leave me alone." BHATT appeared confused regarding Victim-1's skort, which is an article of clothing consisting of a combination of skirt and shorts. BHATT told Victim-1 to remove her skort so that he could continue massaging her and began touching her buttocks. Victim-1 threatened to report BHATT if he continued. In response, BHATT hugged and attempted to kiss Victim-1, saying that he had no wife or girlfriend. Victim-1 told BHATT she did not want to be his wife or girlfriend and threatened to report him if he failed to clean the room or leave. BHATT brought cleaning supplies into the cabin and "would not allow me to leave or have my privacy," so she tried to ignore him until "he finally left." The following day, Victim-1 "finally decided

---

[1] Quoted language is from a written statement Victim-1 provided to the cruise line.
United States v. NEERAJ BHATT
Affidavit in Support of Criminal Complaint

to find someone to tell to get help."

8. FBI and CGIS reviewed security video provided by the cruise line. The video corroborates Victim-1's statements that the cabin door closed promptly while BHATT was inside the cabin and that BHATT entered the cabin three times. The door closed completely and promptly after all three times that BHATT entered Victim-1's cabin. BHATT remained within the cabin, with the door closed, for a total cumulative time of longer than 20 minutes.

9. On May 22, 2023, FBI and CGIS contacted BHATT twice; first onboard the ship in Seward, Alaska, and, later, at the Ted Stevens Anchorage International Airport. During the first interview, BHATT falsely denied[2] entering Victim-1's cabin more than twice in her presence on May 16, 2023. BHATT also falsely said that the cabin door remained open because he used a door jam to hold it open. During the second interview, law enforcement informed BHATT that it is a crime to lie to CGIS and FBI and explained that the purpose of the investigation was to determine what happened inside the cabin. Even after this advisement, BHATT said falsely, again, that he entered Victim-1's room only twice and that he used a doorstop to keep the door open. Law enforcement showed BHATT the security video proving that BHATT entered the cabin twice and that the door closed. BHATT admitted that his prior statement was untrue.

10. BHATT's false statements were material to the FBI and CGIS investigation because they had a natural tendency to influence, or was capable of influencing, the agency's decisions or activities. This is because the investigators needed to understand the

---

[2] BHATT's statements are paraphrased. This affidavit is not a transcript of BHATT's statements.

United States v. NEERAJ BHATT
Affidavit in Support of Criminal Complaint

circumstances of BHATT's and Victim-1's actions, location, and potential isolation from the hallway in order to complete the investigation regarding whether a crime occurred when BHATT touched Victim-1 and remained in her cabin. Based on my training and experience, I believe that, under these circumstances, BHATT knew that his statements regarding the number of times he entered Victim-1's cabin, and the door being open or closed, were untrue and that it was unlawful to make false statements to the FBI and CGIS. The cruise line terminated BHATT's employment.

## CONCLUSION

11. For the reasons described above, based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that NEERAJ BHATT has committed the offenses described in the attached complaint. Accordingly, I ask the Court to issue the complaint and a warrant for NEERAJ BHATT's arrest in accordance with Federal Rule of Criminal Procedure 4(a).

RESPECTFULLY SUBMITTED,

*Katie Yarborough*
Katie Yarborough
Special Agent, FBI

Affidavit submitted via PDF and attested to me as true and accurate pursuant to Fed. R. Crim. P. 4.1 on __May 23, 2023__

The Hon. Kyle F. Reardon
U.S. Magistrate Judge

United States v. NEERAJ BHATT
Affidavit in Support of Criminal Complaint
Page 7 of 7
Case 3:23-mj-00328-KFR   Document 1-1   Filed 05/24/23   Page 7 of 7