S. LANE TUCKER
United States Attorney

JONAS M. WALKER
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, AK 99513-7567
Phone: (907) 271-5071
Email: jonas.walker@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>NEERAJ BHATT,<br><br>Defendant. | No. 3:23-mj-00328-KFR |

**NOTICE OF INTENT TO SEEK DETENTION HEARING**

Comes now the United States of America and advises this Court that it will move for a hearing to determine whether the defendant should be detained pending trial. A hearing is appropriate because, per 18 U.S.C. § 3142(f)(2)(A), this case involves a serious risk that the Defendant will flee.

The Defendant is a citizen of India and has no known connections to the District of Alaska. The Defendant has no incentive to remain in the District of Alaska while this case is pending. Further, the Defendant's United States Visa appears to be a Type C1/D Visa.

According to the State Department:

> Generally, a citizen of a foreign country who wishes to enter the United States must first obtain a visa, either a nonimmigrant visa for temporary stay, or an immigrant visa for permanent residence. Crewmember (D) visas are nonimmigrant visas for persons working on board commercial sea vessels or international airlines in the United States, providing services required for normal operation and intending to depart the United States on the same vessel or any other vessel within 29 days. If you travel to the United States to join the vessel you will work on, in addition to a crewmember (D) visa, you also need a transit (C-1) visa or a combination C-1/D visa.[1]
>
> Transit (C) visas are nonimmigrant visas for persons traveling in immediate and continuous transit through the United States en route to another country, with few exceptions. Immediate and continuous transit is defined as a reasonably expeditious departure of the traveler in the normal course of travel as the elements permit and assumes a prearranged itinerary without any unreasonable layover privileges. If the traveler seeks layover privileges for purposes other than for transit through the United States, such as to visit friends or engage in sightseeing, the traveler will have to qualify for the type of visa required for that purpose.[2]

Accordingly, it appears the Defendant lacks a Visa that would permit him to be lawfully admitted to the United States for a lengthy period pending the resolution of this prosecution.

The standard for this Court to order release of a defendant under 18 U.S.C. § 3142 is different than the legal standard for detention of an alien by Immigration and Customs Enforcement under Title 8. In *United States v. Lett*, 944 F.3d 467, 472 (2d Cir. 2019), the Second Circuit rejected the defendant's argument that a district court's release order in a criminal prosecution mooted the executive branch's authority to detain him pursuant to

---

[1] https://travel.state.gov/content/travel/en/us-visas/other-visa-categories/crewmember-visa.html (accessed May 25, 2023)
[2] https://travel.state.gov/content/travel/en/us-visas/other-visa-categories/transit.html (accessed May 25, 2023)

immigration authority.

> Lett argues that [18 U.S.C. § 3142(d)] provides ICE with one, exclusive avenue for taking custody of criminal defendants, reflecting Congress's understanding that criminal prosecution generally takes priority over removal, unless the government elects otherwise during the ten-day statutory period. Any other interpretation, he contends, would render the statutory ten-day period meaningless.
>
> This argument misconstrues section 3142(d). The ten-day period is a limitation on the *district court's* authority to release a defendant pursuant to the BRA. It has no bearing on the *government's* authority to detain a defendant pursuant to the INA at a later date. Section 3142(d) is primarily a notice provision designed to give other agencies an opportunity to take custody of a defendant before a BRA release order is issued. By providing these other agencies an opportunity to take custody of such persons, the BRA effectively gives respect to pending cases and allows those officials to act before bail is set in the federal case. The BRA's temporary detention scheme thus reflects Congress' recognition that immigration authorities have separate interests. It does not give a district court the authority to compel another sovereign or judge in federal administrative proceedings to release or detain a defendant.

*Lett*, 944 F.3d 467, 471–72 (emphasis in original; cleaned up).

Although the Court should not order detention under § 3142 merely because of the presence of an immigration detainer (and the undersigned is presently unaware of any such detainer), ("[t]he court may not . . . substitute a categorical denial of bail for the individualized evaluation required by the Bail Reform Act," *United States v. Santos-Flores*, 794 F.3d 1088, 1091–92 (9th Cir. 2015)), 28 U.S.C. § 3142(d) nevertheless requires the Court must order detention of not more than 10 days (excluding weekends and holidays) to allow sufficient time for the Department of Homeland Security to consider taking the Defendant into custody. Thus, in this case, releasing the Defendant from custody in this prosecution would not necessarily result in him remaining out of custody in the

Anchorage area and able to conveniently communicate in-person with counsel.

Moreover, the Defendant is charged with repeatedly making materially false statements to federal law enforcement regarding his actions within in a closed cabin, where he was located alone with a passenger, in violation of cruise line policy. Releasing the Defendant from custody would require this Court to place confidence in a Defendant whom the Court has already found probable cause to believe lied to federal law enforcement during a criminal investigation.

The Government's understanding is that, in light of the Defendant's conduct, the cruise line terminated the Defendant's employment and made arrangements for him to return to India via a one-way airline ticket. The cruise line retained a security company to accompany the Defendant from Seward to the Anchorage International Airport, where, on May 22, 2023, he was originally scheduled to fly to an airport in the Lower 48, from which he would connect to an international flight and, ultimately, arrive in India. The security contactor was retained to accompany the Defendant during the entirety of his travel within the United States, from Seward to the Lower 48 airport from which he would depart for a foreign destination. However, the cruise line terminated the Defendant's travel because the FBI arrested the Defendant.

Accordingly, the Government will seek detention.

RESPECTFULLY SUBMITTED May 25, 2023 at Anchorage, Alaska.

S. LANE TUCKER
United States Attorney

/s Jonas M. Walker
JONAS M. WALKER
Assistant United States Attorney
United States of America

**CERTIFICATE OF SERVICE**

I hereby certify that on May 25, 2023 a true and correct copy of the foregoing was served electronically on all counsel of record.

/s Jonas M. Walker

U.S. v. BHATT
3:23-mj-00328-KFR